## STATE OF CONNECTICUT *v.* CARLOS RODRIGUEZ, SR.
### (AC 25393)

Gruendel, Harper and Dupont, Js.

Argued October 17, 2005—officially released February 14, 2006

*Charles F. Willson*, special public defender, for the appellant (defendant).

*Erik T. Lohr*, deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Craig P. Nowak*, assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Carlos Rodriguez, Sr., appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with the intent to sell by a person who is not drug-dependent in viola-

tion of General Statutes § 21a-278 (b) and possession of narcotics with the intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b).[1] On appeal, the defendant claims that (1) the trial court improperly denied defense counsel's motion to withdraw, thereby denying the defendant effective assistance of counsel, (2) there was insufficient evidence to support a conviction of possession of narcotics and (3) the court improperly instructed the jury regarding nonexclusive possession. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On July 24, 2002, William Bailey, a sergeant with the Bridgeport police department, was conducting undercover surveillance of the P.T. Barnum housing project in Bridgeport. Bailey observed two men conversing and surveying the area. He then parked his unmarked police vehicle across from building number five to continue watching the two men, who were later identified as the defendant and Robert Kelly. At approximately 12:15 p.m., Bailey observed the defendant and Kelly exchange paper currency. The defendant then went up a set of stairs leading to two second floor apartments in building number five. The defendant spoke to another man and then entered apartment 206. The defendant came out of apartment 206 and dropped a small item down to Kelly. As Kelly was walking by Bailey's unmarked car, Bailey observed Kelly holding a fold.[2] Still in his car, Bailey followed Kelly out of the housing project to the Evergreen Apartments, an abandoned housing project approximately two blocks away, and called for backup.

Ernest Garcia, an officer with the Bridgeport police department narcotics and vice division, arrived in uni-

---

[1] The court imposed a total effective term of eight years imprisonment.

[2] A fold was described at trial as glassine paper, folded to hold cocaine or heroin.

form and in a marked police vehicle. The two officers found Kelly in a basement of one of the abandoned buildings as he was about to use the drugs that were in the fold.[3] Garcia arrested Kelly. Bailey returned to the P.T. Barnum housing project to continue observing the defendant.

Bailey resumed his surveillance from the same parking space across from building number five. At that time, he observed another individual, who was later identified as the defendant's son, riding a bicycle toward the defendant. The defendant's son handed the defendant a small plastic bag with white folds in it. As the defendant went back up the stairs toward apartments 206 and 208, his son looked intently at Bailey's car. Bailey became concerned that his undercover status had been compromised and, as a result, again called for reinforcement.

Garcia arrived with several other officers from the Bridgeport police department. After seeing the marked police vehicles, the defendant and a man later identified as Sereno Almodovar, who had been standing on a landing with the defendant, ran into apartment 208.[4] As Garcia reached the top of the stairs, the defendant emerged from apartment 208. Garcia immediately placed the defendant under arrest.

---

[3] There was conflicting testimony at trial as to whether the drugs in Kelly's possession tested positive for heroin or cocaine. The nature of Kelly's drugs, however, is not relevant to the present appeal because the defendant was never charged in relation to that transaction.

[4] At oral argument, the parties disagreed about which apartment the defendant entered after seeing Garcia. The defendant took the position that apartment 206 was the location at issue during the first transaction with Kelly, and apartment 208 was the location at issue when Garcia approached and arrested the defendant. The state, on the other hand, took the position that all events in question took place in apartment 206. We reference apartment 208 here because we conclude that the jury reasonably could have found that the defendant entered that apartment on the basis of the testimony of Bailey and Garcia. In addition, the court in its instructions to the jury identified apartment 208 as the situs of the alleged violations.

At that time, a woman came down from the second floor of the apartment. Garcia informed her that the defendant had entered the apartment and that he may have hidden narcotics or a weapon in the apartment. Garcia then searched the areas of the apartment that were closest to the front door. He recovered a clear plastic bag containing nine white glassine envelopes near the garbage receptacle in the kitchen. Later testing revealed that the glassine envelopes contained heroin. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion in denying defense counsel's motion to withdraw, thus depriving the defendant of effective assistance of counsel as guaranteed by the sixth amendment to the United States constitution[5] and article first, § 8, of the Connecticut constitution.[6] We disagree.[7]

The following additional facts are relevant to our resolution of that issue. On March 31, 2003, the day before jury selection was to begin, defense counsel filed

[5] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." It is well settled that this right includes the right to effective assistance of counsel and its corollary, the right to conflict free representation. See *State* v. *Drakeford*, 261 Conn. 420, 425 n.8, 802 A.2d 844 (2002).

[6] The constitution of Connecticut, article first, § 8, provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ."

[7] We decline to review the defendant's claim that his state constitutional rights were violated by the court's denial of counsel's motion to withdraw because there has been no independent analysis of that claim. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004).

a motion to withdraw.[8] The court heard argument on the motion on April 1, 2003. Defense counsel claimed that the basis of the motion to withdraw was the defendant's assertion that he had filed a grievance against counsel the previous week. Counsel stated that neither he nor the defendant had a copy of the grievance. He further noted that he had been unable to obtain a copy of the grievance from the statewide grievance committee. The defendant then addressed the court. As the defendant began to address the basis of his grievance—allegedly his dissatisfaction with the way counsel had handled plea negotiations—the court interrupted him and stated that the terms of pretrial discussions were not an appropriate subject for discussion with the court. The court then denied counsel's motion.

Later that day, after jury selection had commenced, the court revisited defense counsel's motion to withdraw. The court noted that the motion had been denied without prejudice and asked counsel whether he had any additional argument to make in support of the motion. Counsel indicated at that time that he did not have additional grounds to support the motion. The court informed counsel that if he wanted to renew the motion at the end of that day, or before the jury entered the next day, the court would again entertain the motion. The motion was never renewed, and trial commenced the next morning.

Before reviewing the defendant's claim, we underscore that our review is of the actions of the trial court, not of the actions of defense counsel. As this court previously has stated: "Almost without exception, we have required that a claim of ineffective assistance of counsel . . . be raised by way of habeas corpus, rather

---

[8] That was the second motion to withdraw filed in this case. A motion to withdraw also had been filed on November 13, 2002, by the defendant's first counsel, in part, because the defendant had filed a grievance against him.

than by direct appeal, because of the need for a full evidentiary record for such [a] claim. . . . On the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal, we have limited our review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the trial court, rather than by those of his counsel. . . . We have addressed such claims, moreover, only whe[n] the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development. . . . Our analysis, therefore, is restricted to the actions of the trial court . . . ." (Internal quotation marks omitted.) *State* v. *Lopez*, 80 Conn. App. 386, 390, 835 A.2d 126 (2003), aff'd, 271 Conn. 724, 859 A.2d 898 (2004).

Our review of the court's denial of defense counsel's motion to withdraw rests on a determination of whether the court abused its discretion. *Morgan* v. *Commissioner of Correction*, 87 Conn. App. 126, 136, 866 A.2d 649 (2005). "We accord wide discretion to a trial court's ruling on a motion for disqualification of counsel for conflict of interest. . . . In determining whether the trial court abused its discretion, we indulge every reasonable presumption in favor of the correctness of the court's decision. . . . The ultimate issue is whether the . . . court could reasonably have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) Id.

"The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment . . . guarantee[s] to a criminal defendant the right to [the] effective assistance of counsel. . . . Where a constitutional right to counsel exists . . . there is a correlative right to representation that is free from conflicts of interest. . . . To safeguard a criminal defendant's right to the effective assistance of counsel,

a trial court has an affirmative obligation to explore the possibility of conflict when such conflict is brought to the attention of the trial [court] in a timely manner." (Citations omitted; internal quotation marks omitted.) *State* v. *Lopez*, supra, 80 Conn. App. 391. "The extent of the inquiry, however, lies within the discretion of the trial court. . . . A trial court does not abuse its discretion by failing to make further inquiry where the defendant has already had an adequate opportunity to inform the trial court of his complaints." (Internal quotation marks omitted.) *State* v. *Dews*, 87 Conn. App. 63, 83, 864 A.2d 59, cert. denied, 274 Conn. 901, 876 A.2d 13 (2005).

In the present case, the transcript reveals that the court explored the possibility of a conflict of interest when it received defense counsel's motion to withdraw. After receiving the motion, the court heard argument from counsel. Counsel explained that the defendant allegedly had filed a grievance against him as a result of the defendant's dissatisfaction with the way counsel had worked with the state during pretrial negotiations.[9] Counsel argued that he foresaw a potential conflict of interest as a result of both having to represent the defendant in his criminal trial and to defend against the defendant's grievance before the statewide grievance committee. After hearing from counsel, the court allowed the defendant to make a statement regarding the motion. The defendant complained that counsel had not been responsive to certain requests that he had made[10] and that counsel had not provided him with a

---

[9] Counsel noted at that time that neither he, nor the defendant, had a copy of the grievance for the court. Counsel stated that despite trying to obtain a copy from the statewide grievance committee earlier that morning, he had been unsuccessful.

[10] The defendant claimed that he had asked counsel to obtain transcripts from his probation hearing to use for comparison at his criminal trial, but that counsel had failed to comply with that request. In addition, the defendant complained that counsel had not filed a discovery motion that he had requested counsel file before trial.

blueprint of his trial. The defendant then began to discuss his unhappiness with counsel's conduct during plea negotiations, but the court interrupted him and stated that it would not entertain discussions about the defendant's pretrial negotiations with the state. At that time, the court denied the motion and proceeded with jury selection.

Contrary to the defendant's claim that the court did not conduct a thorough inquiry of the potential conflict of interest, the court heard from both counsel and the defendant. Neither could provide the court with a copy of the grievance, and neither was able to assert a reason to grant counsel's motion to withdraw on the eve of trial. Instead, the court's inquiry into the basis for the motion revealed that the defendant was simply unhappy with counsel's representation. Insignificant and unsubstantiated complaints about counsel's performance and mere disagreements with counsel's tactical decisions are not sufficient to warrant the withdrawal of counsel. *State* v. *Vega*, 259 Conn. 374, 391, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002).

Indeed, the court's inquiry into that issue continued even after the initial argument by counsel and the defendant. Later that same afternoon, after jury selection began, the court asked counsel whether he had any additional information to support the motion to withdraw. Counsel indicated that he did not. The court further noted that the motion had been denied without prejudice and that if counsel subsequently obtained additional information that would substantiate a conflict of interest, the court would revisit the motion. Trial proceeded the next day, but the motion was never renewed. Thus, the court thoroughly explored defense counsel's potential conflict of interest at the first opportunity and continued to fulfill its obligation to investigate the conflict by informing counsel that the motion

could be renewed before the beginning of trial. Under those circumstances, we cannot say that the court abused its discretion in denying defense counsel's motion to withdraw.

## II

The defendant next claims that there was insufficient evidence to convict him of possessing narcotics in violation of §§ 21a-278 (b) and 21a-278a (b).[11] The defendant contends that the only evidence supporting the possession element of those two offenses was the testimony of Bailey and Garcia establishing the defendant's physical proximity to the bag of heroin found at the scene. The defendant argues that because he was not in exclusive possession of the apartment where the heroin was discovered, physical presence alone is insufficient to establish possession. As a result, the defendant argues, the conviction must be reversed. We disagree.

In reviewing sufficiency of the evidence claims, we apply a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *State* v. *Straub*, 90 Conn. App. 147, 153–54, 877 A.2d 866, cert. denied, 275 Conn. 927, 883 A.2d 1252 (2005).

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved

---

[11] The defendant preserved his claim by making a motion for a judgment of acquittal on the ground of insufficient evidence. See *State* v. *Binnette*, 86 Conn. App. 491, 495 n.2, 861 A.2d 1197 (2004), cert. denied, 273 Conn. 902, 868 A.2d 745 (2005).

beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Leon-Zazueta*, 80 Conn. App. 678, 682, 836 A.2d 1273 (2003), cert. denied, 268 Conn. 901, 845 A.2d 405 (2004).

"[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [narcotics were] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive

possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . To mitigate the possibility that innocent persons might be prosecuted for . . . possessory offenses . . . it is essential that the state's evidence include more than just a temporal and spatial nexus between the defendant and the contraband. . . . While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime." (Citation omitted; internal quotation marks omitted.) State v. Davis, 84 Conn. App. 505, 510–11, 854 A.2d 67, cert. denied, 271 Conn. 922, 859 A.2d 581 (2004).

The evidence in this case did not consist merely of the defendant's physical proximity to the heroin that was recovered from apartment 208, despite the defendant's assertions to the contrary. Rather, there were other incriminating circumstances that buttressed the inference that the defendant knew of the presence of the bag of heroin and had control of it. Bailey observed the defendant's son approach the defendant and hand him a small plastic bag with white folds in it. Bailey then called for reinforcement and Garcia arrived in a marked police vehicle. After seeing the marked police vehicle, the defendant ran into apartment 208. He emerged seconds later as Garcia reached the top of the stairs and entered the apartment.

After arresting the defendant, Garcia spoke to a woman who was coming down from the second floor of the apartment. He informed her that the defendant

may have left narcotics or a weapon inside the apartment and then immediately searched the area in close proximity to the front door of apartment 208. Garcia found a plastic bag with white folds in it behind the trash receptacle in the kitchen, which was to the immediate left of the front door. Although the defendant was not in exclusive possession of the apartment—he did not live there, and another woman was present when Garcia searched the premises—it was reasonable for the jury to infer that he had dropped the bag of heroin behind the trash receptacle during the brief time that he was in the apartment.

The defendant argues that the testimony of Bailey and Garcia was not credible for several reasons, including the fact that Bailey was too far away from the transaction between the defendant and his son to identify the contents of the plastic bag and that Garcia never investigated the woman in the apartment to see if the heroin belonged to her. Those issues, however, were fully addressed by defense counsel during cross-examination and closing argument. "Whether [a witness'] testimony [is] believable [is] a question solely for the jury. It is . . . the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses." (Internal quotation marks omitted.) *State* v. *McFarlane*, 88 Conn. App. 161, 169, 868 A.2d 130, cert. denied, 273 Conn. 931, 873 A.2d 999 (2005). Construing the evidence in the light most favorable to sustaining the verdict and deferring to the jury's credibility determinations, we conclude that there was sufficient evidence to establish that the defendant possessed heroin.

III

The defendant finally claims that the court improperly instructed the jury regarding the issue of nonexclusive possession. Specifically, the defendant claims that

the court violated his constitutional right to due process by giving an incomplete instruction. We disagree.

In his request to charge, the defendant asked that the jury be instructed as follows: "Where the defendant is not in exclusive possession of the premises where the narcotics are found, you may not infer that he knew of their presence and that he had control of them, unless he made some incriminating statement, or unless there are some other circumstances which tend to support such an inference." See also D. Borden & L. Orland, 9 Connecticut Practice Series: Criminal Jury Instructions (2d Ed. 1997) § 15.2, p. 671. The court's instruction was similar, although not identical to that requested by the defendant. It stated: "You should also consider that where it is shown that a person is not the sole and exclusive possessor of the premises where the narcotics are found, you cannot infer from the mere presence of the narcotics that such a person knew of their presence and had control over them. Whether the defendant had possession of the heroin in this case is a question of fact for you to decide. And you may, as I have told you, draw logical and reasonable inferences from the evidence."

We note initially that the defendant's challenge to the court's instruction is properly reviewable. "A party may preserve for appeal a claim that a jury instruction was improper either by submitting a written request to charge or by taking an exception to the charge as given." *Pestey* v. *Cushman*, 259 Conn. 345, 372–73, 788 A.2d 496 (2002). Here, defense counsel submitted his requested instruction in written form the day before trial concluded.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by

its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Erhardt*, 90 Conn. App. 853, 870–71, 879 A.2d 561, cert. denied, 276 Conn. 906, 884 A.2d 1028 (2005).

In applying those principles to the defendant's claim that the court failed to charge the jury as he requested, "we must adopt the version of the facts most favorable to the defendant which the evidence would reasonably support." (Internal quotation marks omitted.) *State* v. *Nesmith*, 220 Conn. 628, 632, 600 A.2d 780 (1991). The court must give a requested instruction if it is relevant to the issues of the case and accurately states the law. *State* v. *Weber*, 31 Conn. App. 58, 68, 623 A.2d 506, cert. denied, 226 Conn. 908, 625 A.2d 1379 (1993). "The court, however, has a duty not to submit to the jury, in its charge, any issue upon which the evidence would not reasonably support a finding." *State* v. *Diggs*, 219 Conn. 295, 299, 592 A.2d 949 (1991).

In this case, the defendant did not challenge the testimony of either Bailey or Garcia that he was present at the P.T. Barnum housing project on July 24, 2002. He also did not dispute the officers' testimony that he ran into apartment 208 when Garcia arrived. Rather, the defendant's theory of the case appears to be that he was on the premises that day and that he did enter apartment 208 after seeing Garcia, but that the heroin that was discovered in the kitchen of apartment 208

belonged either to the woman who emerged from the second floor of the apartment, to Almodovar, the other man who was on the landing in front of apartment 208, or to some other occupant of that apartment. Adopting that possible version of the facts, we now consider the defendant's claim that the court violated his constitutional right to due process by omitting from its jury instruction the clause in the defendant's request to charge, "unless he made some incriminating statement, or unless there are some other circumstances which tend to support such an inference."

After a thorough review of the court's charge as a whole, we conclude that it was not reasonably possible that the jury was misled. Although the court did not use the specific language that the defendant requested, it fully addressed the elements of constructive possession. The defendant's claim that the court's instruction on nonexclusive possession was improper without the clause, "unless he made some incriminating statement," is unavailing because there was no evidence of any statement made by the defendant during the events in question, much less an incriminating one. Without any evidence to support such a finding, the court did not act improperly in excluding that language. See *State* v. *Diggs*, supra, 219 Conn. 299.

As to the absence of the second clause of the defendant's requested instruction, we conclude that the court's charge gave the jury sufficient guidance in reaching a verdict. Specifically, the court first advised the jury that presence alone was insufficient to support a finding that the defendant constructively possessed heroin and further explained that the jury could make "logical and reasonable inferences [based on] the evidence." Because there was ample additional testimonial and circumstantial evidence connecting the defendant to the heroin, it is not reasonably possible that the jury found the element of possession satisfied solely

because the defendant had been present at the location where the heroin was found. See *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 306, 776 A.2d 461, cert. denied, 258 Conn. 902, 782 A.2d 136 (2001). We conclude, therefore, that the defendant was not denied his constitutional right to due process by the court's instruction on nonexclusive possession.

The judgment is affirmed.

In this opinion the other judges concurred.