STATE OF CONNECTICUT *v.* SOLOMAN R. BARNES
(AC 29144)
(AC 29145)

Bishop, McLachlan and Beach, Js.

Argued October 22, 2008—officially released February 17, 2009

*John R. Williams*, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*,

state's attorney, and *Helen M. McLellan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Soloman R. Barnes, was charged in part A of a two part information with possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a) and possession of a narcotic substance with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b) in connection with an incident that occurred on March 7, 2006 (March incident). In part B of the information, the defendant was charged with being a subsequent offender. In another case, the defendant was charged in part A of a two part information with two counts of criminal possession of a firearm in violation of General Statutes § 53a-217 (a), and with theft of a firearm in violation of General Statutes § 53a-212 (a), possession with intent to use drug paraphernalia in violation of General Statutes § 21a-267 (a), possession with intent to use drug paraphernalia within 1500 feet of a school in violation of General Statutes § 21a-267 (c), possession of an hallucinogenic substance with intent to sell in violation of General Statutes § 21a-277 (a) and possession of an hallucinogenic substance with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b) following the execution of a search warrant on May 21, 2006 (May incident). In part B of that information, the defendant was charged with being a subsequent offender and a persistent serious felony offender. The two informations were joined for trial pursuant to General Statutes § 54-57 and Practice Book § 41-19.

Following a jury trial, the defendant was convicted of all part A charges except theft of a firearm. After the verdicts were returned, the defendant entered pleas of nolo contendere to being a subsequent offender and

a persistent serious felony offender for purposes of the part B charges in both informations. On August 21, 2007, the court imposed a total effective term of twenty years imprisonment, execution suspended after ten years, with five years of probation. In appealing from the judgments,[1] the defendant claims that (1) there was insufficient evidence to support his conviction of the charges in connection with the May incident, (2) the court improperly joined the two informations for trial and (3) the court improperly instructed the jury on consciousness of guilt. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On March 2, 2006, Christopher Perrone, a detective with the New Haven police department, arrested Emmit Scott, a major participant in illegal drug activities in the Hill South section of New Haven. Perrone inquired as to whether Scott would be willing to provide to his unit at the statewide cooperative crime control task force information identifying other members of Scott's group who were involved in the sale of narcotics or guns. In return, Perrone indicated that his unit would notify the state's attorney that Scott had cooperated with its investigation. Scott agreed and made arrangements to have crack cocaine delivered to a specific address on Edgar Street in New Haven, which happened to be within 1500 feet of Roberto Clemente Middle School.

On March 7, 2006, Perrone transported Scott to an area close to the location at which the arranged delivery was to be made. Another officer, Detective Jose Silva, sat nearby in his parked vehicle to assist Perrone. Scott had been told to remove his baseball cap as a signal to

---

[1] The defendant filed separate appeals from the judgments of conviction rendered in both cases. AC 29144 is the appeal from the judgment of conviction in connection with the May incident, and AC 29145 is the appeal from the judgment of conviction in connection with the March incident. By order issued December 5, 2007, this court consolidated the two appeals.

the officers when the expected black Honda with tinted windows arrived to complete the transaction. Scott then exited Perrone's vehicle and walked to the Edgar Street location. When the Honda appeared and parked near Scott, he removed his cap and fled on foot. Perrone alerted Silva, and the officers approached the Honda. The defendant was the driver of the Honda, and Jamaal Richardson was the only passenger. As Richardson exited the Honda, he dropped seven packets of crack cocaine in the gutter area next to the vehicle. When the defendant exited the Honda, Silva conducted a patdown search, and a clear plastic bag containing four individual bags of crack cocaine fell from the bottom of the defendant's right pant leg. The defendant and Richardson were arrested.

On May 21, 2006, Richard Pelletier, a detective with the New Haven police department, along with several officers, executed a warrant authorizing their search of the first floor of 173 Thompson Street in New Haven for firearms, ammunition and proof of residence and additionally authorizing the search of the defendant's person. The residence to be searched was located within 1500 feet of Lincoln Bassett Elementary School. After they arrived and announced: "Police with a search warrant," they waited a reasonable amount of time and then forcibly opened the door when they received no response. Seeing no occupants, the officers secured the area.

Pelletier and Detective Justin Kasperzyk proceeded to search the rear bedroom and found men's and women's clothing in the closet and in the dresser. On the dresser, they located a Yale-New Haven Hospital identification badge with the defendant's name and photograph, a Yale-New Haven Hospital pay stub bearing the defendant's name, an open envelope with correspondence addressed to the defendant, a social security card in the name of Crystal Hinton and a Barnes and Noble

earnings statement for Hinton. In one of the dresser drawers, containing undergarments for both a man and a woman, Kasperzyk found a box of bullets for a nine millimeter handgun. When Kasperzyk lifted the mattress on the bed, he discovered a Norinco nine millimeter handgun on one side of the box spring and a Beretta .22 caliber handgun on the opposite side of the box spring. In the closet of the bedroom, the officers located a large bag of a white substance commonly used as a cutting agent.

Members of the search team additionally located $550 in cash in an open spice rack in the kitchen. The freezer in the kitchen contained thirteen mini ziplock bags that tested positive for phencyclidine or PCP. A McCormick brand spice bottle and a small clear ziplock bag in the freezer likewise tested positive for PCP. In the dining room area off the kitchen, Kasperzyk found a blue nylon Yale-New Haven Hospital lunch bag in a built-in hutch. Inside the bag, there were numerous small empty glass jars, a digital scale, a playing card, a razor blade and packaging material consisting of six ziplock bags with multiple smaller ziplock bags inside. Residue on the scale tested positive for cocaine. After the search had been completed, the officers left a page of the search warrant with a man who identified himself as the defendant's father.

On May 23, 2006, two days after the execution of the search warrant, Joe Dease, Jr., an officer with the New Haven police department, was patrolling the Newhallville section of New Haven in an unmarked vehicle at approximately 3 p.m. He noticed the defendant standing in a group of people and was aware that an arrest warrant had been issued for him. Dease radioed for assistance and a marked patrol cruiser came into view. At that point, Dease walked toward the defendant. Although Dease was in plain clothes, he had his state auto theft task force badge suspended from his neck.

Dease's vehicle was blocking the driveway of the house at which the defendant was found, and the patrol cruiser stopped behind that vehicle. The defendant made eye contact with Dease and sprinted away from him. Although the officers pursued the defendant, he was not apprehended at that time.

The defendant was charged in two separate informations in connection with the March incident and the May incident. The state filed a motion to join the two informations for trial, and the defendant filed a motion to sever the charges. The court granted the state's motion and denied the defendant's motion at a hearing held on February 22, 2007. The trial commenced on February 28, 2007. After four days of evidence, the jury returned its verdicts. The court accepted the verdicts and rendered its judgments accordingly. These consolidated appeals followed.

I

The defendant first claims that there was insufficient evidence to support his conviction of the charges in connection with the May incident. Specifically, he argues that there was no evidence to establish a connection between him and the premises at which the handguns, controlled substances and drug paraphernalia were found at the time of the seizure. According to the defendant, he had vacated the premises in April, 2006, and had left behind a few items of personal property at Hinton's residence. Because he no longer lived at 173 Thompson Street and the May incident charges were all possessory offenses, the defendant claims that there was no evidence to support the conclusion that he exercised dominion or control over the seized items.

We apply a two part test in reviewing sufficiency of the evidence claims. "First, we construe the evidence in the light most favorable to sustaining the verdict.

Second, we determine whether upon the facts so con-strued and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defen-dant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, 93 Conn. App. 739, 748–49, 890 A.2d 591 (2006), appeal dismissed, 281 Conn. 817, 917 A.2d 959 (2007).

"[T]he probative force of the evidence is not dimin-ished because it consists, in whole or in part, of circum-stantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinc-tion between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circum-stantial evidence." (Internal quotation marks omitted.) *State* v. *Riser*, 70 Conn. App. 543, 552, 800 A.2d 564 (2002).

"[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [narcotics were] not found on the defendant's

person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime." (Internal quotation marks omitted.) *State* v. *Rodriguez*, supra, 93 Conn. App. 749–50.

In the present case, the defendant claims that there was insufficient evidence to demonstrate that he shared possession of the first floor of 173 Thompson Street in New Haven with Hinton on May 21, 2006. Absent exclusive or joint possession of the premises, the defendant argues, the jury reasonably could not have concluded that he had constructive possession of the items seized in the May incident. We conclude that there was ample evidence to support a finding that the defendant shared the premises with Hinton at that time.

At trial, the jury heard testimony that the defendant's mother owned the multifamily dwelling at 173 Thompson Street and leased the first floor to Hinton. There was testimony from Pelletier that he had checked with the department of motor vehicles (department) to confirm that the defendant's address was the Thompson

Street address on May 21, 2006. Additionally, the branch manager of the department's office in Hamden testified that the department's records reflected that the defendant had reported his address as being 173 Thompson Street prior to May 30, 2006. On May 30, 2006, which was shortly after the execution of the search warrant, the manager indicated that the defendant reported a change in address.

Further, the defendant's Yale-New Haven Hospital identification badge and his pay stub were on the dresser in the bedroom. A Yale-New Haven Hospital lunch bag was located in the kitchen area. The assistant record keeper at Yale-New Haven Hospital testified that the defendant had been employed by the hospital from July 9, 2001, through February 14, 2006. His last paycheck was issued on February 23, 2006. Although the search did not take place until May 21, 2006, there also was correspondence in the bedroom addressed to the defendant from the bureau of child support enforcement at the department of social services. The envelope containing that correspondence had been opened, and Hinton testified that she did not recognize the correspondence and did not open the defendant's mail. The correspondence indicated an amount that the defendant owed in connection with child support orders as of May 13, 2006.

Additionally, Pelletier testified that the closet in the bedroom was relatively full of clothing worn by a man. He indicated that the closet also contained some clothing worn by a woman. Kasperzyk testified that he observed men's pants, jackets, shirts and shoes in the closet and throughout the bedroom. He also observed women's clothing in the bedroom. In the dresser, he located undergarments belonging to a man and to a woman. Pelletier testified that he did not find any evidence in the area searched that indicated there were

individuals other than the defendant and Hinton residing at that location. Accordingly, even though Hinton testified that the defendant had moved from the premises in April and had left behind articles that he no longer wanted, the jury reasonably could have concluded from the evidence presented that he continued to share possession of the premises with her at the time of the search on May 21, 2006.

Because the evidence supported a claim of joint or shared possession, but not exclusive possession, the jury reasonably could not have concluded that the defendant had constructively possessed the weapons, controlled substances and paraphernalia seized on May 21, 2006, namely, that he had known of their presence and had control over them, "unless there [were] other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) *State* v. *Rodriguez*, supra, 93 Conn. App. 750. We conclude that there were other incriminating circumstances to support the jury's verdict.

We first note that the defendant's Yale-New Haven Hospital lunch bag, identification badge and pay stub were admitted as full exhibits without objection. Additionally, the two handguns, the large bag containing a white substance located in the bedroom closet, the bullets in the dresser drawer, the bags and bottle with material that tested positive for PCP and the contents of the lunch bag also were admitted without objection by the defendant.

From the exhibits and the testimony, the jury reasonably could have made the following inferences. The lunch bag belonged to the defendant because he had been employed by Yale-New Haven Hospital. The drug paraphernalia belonged to the defendant because it was found in his lunch bag. The cutting agent, used for packaging drugs, also belonged to the defendant

because it was found in the bedroom closet containing his clothes and because Hinton testified that she did not own the white powder. The defendant had knowledge and control of the bullets in the dresser drawer because it contained his underwear. The defendant was aware of the two handguns located underneath his mattress because his clothes and other items of personal identification were found in the bedroom along with the bullets in the dresser drawer. Although the bullets were for the nine millimeter handgun, it was not unreasonable to conclude that he would have been aware of the presence of both fully loaded handguns that were located under the same mattress because the jury reasonably could have inferred that the defendant and Hinton shared the bed and the bedroom.

With respect to the PCP found in the freezer, we note that there were thirteen mini ziplock bags, a McCormick bottle and a small clear ziplock bag containing that controlled substance. This is not a situation in which a miniscule amount is secreted in a place hidden from view. The freezer was in the kitchen, a common area to both occupants of the residence. No evidence was found during the search that indicated that anyone other than the defendant and Hinton shared or had access to the premises. Moreover, the jury reasonably could have found that the mini ziplock bags in the defendant's Yale-New Haven Hospital lunch bag were sufficiently similar in type and size to the mini ziplock bags containing the PCP to infer that the defendant was in possession and control of the PCP in the freezer. Under those circumstances, we agree with the statement of the court in *United States* v. *Jenkins*, 928 F.2d 1175, 1179 (D.C. Cir. 1991): "The natural inference is that those who live in a house know what is going on inside, particularly in the common areas." Given the nature of the place where the PCP was found, including the quantity of the PCP and the manner in which it was packaged, it would

defy logic and human experience to believe that the defendant, with a possessory interest in the premises, was unaware of its presence. See *Goffinet* v. *Indiana*, 775 N.E.2d 1227, 1229, 1232 (Ind. App. 2002) (marijuana in two bags in kitchen freezer constructively possessed by defendant, who was one of two occupants having access to freezer).

The fact that the defendant shared the premises with Hinton and that the same reasoning would apply to her as to the defendant, does not require a different conclusion. "[I]f the drugs are located in a common area accessible to a person other than the defendant, that fact alone does not prevent the defendant from being found in possession of the drugs." *State* v. *Williams*, 110 Conn. App. 778, 789, 956 A.2d 1176, cert. denied, 289 Conn. 957, 961 A.2d 424 (2008). Constructive possession may be either sole or joint. See *United States* v. *Alanis*, 265 F.3d 576, 592 (7th Cir. 2001), cert. denied, 535 U.S. 1095, 122 S. Ct. 2289, 152 L. Ed. 2d 1049 (2002); *United States* v. *Batista-Polanco*, 927 F.2d 14, 19 (1st Cir. 1991); *United States* v. *Holm*, 836 F.2d 1119, 1124 (8th Cir. 1988).

Finally, we note that the defendant fled from the officers on May 23, 2006, two days after the execution of the search warrant. The defendant's behavior at that time indicated a consciousness of guilt. The unexplained flight of a person accused of a crime is a circumstance, which, when considered together with all of the facts of the case, may justify an inference of the accused's guilt. See *State* v. *Fagan*, 280 Conn. 69, 82, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007); *State* v. *Davis*, 84 Conn. App. 505, 512–13, 854 A.2d 67, cert. denied, 271 Conn. 922, 859 A.2d 581 (2004). On the basis of the cumulative effect of the evidence and the reasonable inferences drawn therefrom, we conclude that the jury reasonably could have found that the defendant was in

constructive possession of the two handguns, the PCP and the drug paraphernalia seized at 173 Thompson Street in New Haven on May 21, 2006.

## II

The defendant next claims that the two informations were joined improperly by the court and should have been tried separately. The defendant argues that the factual scenarios of the two cases were not easily distinguishable and that there was a prejudicial spillover effect that could not be cured by the court's instructions to the jury. We disagree.

The principles that govern our review of a court's ruling on a motion for joinder are well established. Practice Book § 41-19 provides: "The judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together." General Statutes § 54-57 provides: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character,[2] counts for such offenses may be joined in one information unless the court orders otherwise." "In deciding whether to sever informations joined for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions. . . .

"Substantial prejudice does not necessarily result from a denial of severance even [if the] evidence of one

---

[2] "[I]t is apparent that [Practice Book § 41-19] intentionally broadened the circumstances under which two or more indictments or informations could be joined and that whether the offenses are of the same character is no longer essential . . . ." (Internal quotation marks omitted.) *State* v. *Davis*, 286 Conn. 17, 26 n.6, 942 A.2d 373 (2008).

offense would not have been admissible at a separate trial involving the second offense. . . . Consolidation under such circumstances, however, may expose the defendant to potential prejudice for three reasons: First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him . . . . Second, the jury may have used the evidence of one case to convict the defendant in another case even though that evidence would have been inadmissible at a separate trial. . . . [Third] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all. . . .

"Despite the existence of these risks, [our Supreme Court] consistently has recognized a clear presumption in favor of joinder and against severance . . . and, therefore, absent an abuse of discretion . . . will not second guess the considered judgment of the trial court as to the joinder or severance of two or more charges. . . .

"The court's discretion regarding joinder, however, is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, [our Supreme Court has] identified several factors that a trial court should consider in deciding whether a severance may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of

a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *Davis*, 286 Conn. 17, 28–29, 942 A.2d 373 (2008). The three factors, often referred to as the *Boscarino* factors, were articulated in *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987).

During the hearing on the state's motion to join the two informations for trial and the defendant's motion to sever the charges, the court made reference to the *Boscarino* factors. It concluded that the March incident and the May incident involved easily distinguishable factual scenarios, that neither of the incidents was brutal or shocking or violent in nature and that the matters were not so complex as to confuse the jury. For those reasons, the court granted the state's motion for joinder and denied the defendant's motion for severance. We conclude that the court did not abuse its discretion in joining and refusing to sever the two separate informations.

First, the court correctly determined that the informations in this case involved discrete, easily distinguishable factual scenarios. The crimes alleged in each information occurred on different dates at different locations. In the March incident, the defendant was in a motor vehicle with another individual when officers approached and discovered crack cocaine on his person. The defendant was arrested at that time. In the May incident, the defendant was not present at the residence when the officers executed the search warrant and seized handguns, PCP and drug paraphernalia.

At the time of trial, the court emphasized the distinctiveness and separateness of the two cases. Before the

first witness was called, the court asked the prosecutor in the presence of the jury whether that witness was testifying as to the March incident. The prosecutor responded in the affirmative and proceeded to present the evidence relevant to each incident in chronological order. The first day of trial was devoted almost exclusively to the March incident. The second and third days of trial were devoted almost exclusively to the May incident. There were different witnesses who testified to each incident. Further, the court, the state and the defendant continually referred to the different dates of each incident during the examination of the witnesses, the closing arguments and the instructions to the jury. The typed jury instructions were a court exhibit, and the jury had that exhibit during its deliberations. Those instructions clearly separate the two incidents, summarizing the charges for the "First Information (March incident)" and the "Second Information (May incident)" Any remote possibility of confusion was eliminated by the jury instructions.[3]

Second, the crimes charged were not brutal or violent so as to compromise the jury's ability to maintain the distinction among them. The March incident involved the possession of crack cocaine. The May incident involved the possession of PCP and drug paraphernalia. This court has held that charges involving the sale of narcotics are not violent. See State v. Frazier, 39 Conn. App. 369, 376, 665 A.2d 142 (1995). It is true that the May incident also involved the possession of two handguns, but those guns were found in the defendant's absence and were not pointed or fired at anyone. Accordingly, the conduct alleged in the two informations was not brutal or shocking as contemplated by the second Boscarino factor.

---

[3] "[T]he jury [is] presumed to follow the court's directions in the absence of a clear indication to the contrary." (Internal quotation marks omitted.) State v. Russell, 101 Conn. App. 298, 326, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007).

Third, the trial was neither long in duration nor complex. The trial was completed in less than four days. The issues were simple and straightforward. The evidence adduced at trial was similarly uncomplicated. Further, as stated previously, the state presented the evidence in an orderly, chronological fashion. Thus, we do not believe that either the length of the trial or the nature of the evidence presented created a likelihood of jury confusion.

Finally, the court properly instructed the jury to consider separately the charges in the two informations. It emphasized that the two informations involved separate crimes on separate days, that the cases were totally unrelated and that they were being tried together for purposes of judicial economy.[4] We conclude, therefore, that the defendant has failed to meet his heavy burden of demonstrating that the joinder of the charges in the two informations resulted in substantial injustice. *State* v. *Davis*, supra, 286 Conn. 28.

### III

The defendant's final claim is that the court improperly instructed the jury on consciousness of guilt. Specifically, the defendant argues that such an instruction was not warranted because the state presented no evidence that he was aware that the police were looking

---

[4] The court instructed the jury: "[The defendant] is accused of having committed offenses on two separate dates. One on March 7, 2006, and the other on May 21, 2006. These cases are totally unrelated to each other. And they are only being tried together for judicial economy. In your deliberations, you must consider these two informations separately and each count within the two informations separately. You may not use the evidence in one case to convict the defendant in the other case.

"You may not accumulate the evidence from both cases and on that basis convict the defendant of any offense. You may not assume that because the defendant is charged with committing offenses on two separate days that he must have done something wrong."

for him in connection with either the March incident[5] or the May incident when he sprinted away from them on May 23, 2006.[6]

"[T]he decision whether to give an instruction on flight, as well as the content of such an instruction, if given, should be left to the sound discretion of the trial court. . . . We review the defendant's claim under this standard. . . .

"[Our Supreme Court] previously has stated that [f]light, when unexplained, tends to prove a consciousness of guilt . . . . Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . [T]he fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous." (Internal quotation marks omitted.) *State* v. *Scott*, 270 Conn. 92, 104–105, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005).

"[T]he propriety of an instruction regarding consciousness of guilt based upon flight goes to the question of the defendant's state of mind. In other words, when a defendant has left . . . following a crime, the question is: why did he do so? This requires an assessment by the fact finder of the defendant's motivations or reasons for leaving . . . . If there is a reasonable view of the evidence that would support an inference

---

[5] It is clear from a review of the jury instructions that the court's charge on consciousness of guilt was applicable only to the May incident. See footnote 8.

[6] The defendant does not challenge the content or the accuracy of the court's instruction. He claims, instead, that the evidence was insufficient to warrant such an instruction.

that he did so because he was guilty of the crime and wanted to evade apprehension—even for a short period of time—then the trial court is within its discretion in giving such an instruction because the fact finder would be warranted in drawing that inference." (Internal quotation marks omitted.) *State* v. *Cosby*, 99 Conn. App. 164, 168, 913 A.2d 1068, cert. denied, 281 Conn. 920, 918 A.2d 273 (2007).

In the present case, there was evidence that a page of the search warrant had been left with the defendant's father at the defendant's residence at the conclusion of the search on May 21, 2006. Two days later, when an officer in plain clothes with his state auto theft task force badge suspended from his neck approached the defendant, the defendant sprinted away from the officer.[7] The officer's unmarked vehicle was blocking the driveway, and a patrol cruiser stopped behind that vehicle at the time the defendant fled from the scene. Further, the defendant made eye contact with the plain clothes officer immediately prior to his flight.

The defendant's claim that the instruction was improper because the state did not prove that the defendant knew that the police were looking for him is not persuasive. "[T]he state is not required, as a matter of law, to establish that the defendant had actual knowledge that he was being charged with a criminal offense before introducing evidence of his flight. . . . The court properly [allowed] the state to present evidence of the defendant's flight even if the state failed to introduce direct or inferential evidence that the defendant knew that he was wanted by the police." (Internal quotation marks omitted.) *State* v. *O'Neil*, 67 Conn. App. 827, 833–34, 789 A.2d 531 (2002).

The admitted evidence was sufficient to support the consciousness of guilt instruction. The jury was free

---

[7] The officer testified at trial and showed the badge to the jury.

to draw any reasonable inference from the testimony concerning the events of May 23, 2006. The court's charge sufficiently provided the jury with guidance to apply properly the facts to the law.[8] We conclude, therefore, that the court did not abuse its discretion by instructing the jury on consciousness of guilt.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[8] The court instructed the jury: "Consciousness of guilt (May incident). In a criminal trial, it is permissible for the state to show that conduct of the defendant after the time of the alleged offense may fairly have been influenced by the criminal act. That is, the conduct shows a consciousness of guilt. The conduct of the defendant in fleeing the scene—in fleeing the area of 206 Star Street on May 23, 2006, if you find that he did so, may be considered in determining his guilt since it may tend to prove a consciousness of guilt.

"However, this conduct, if shown, is not conclusive of anything. The defendant's conduct, if shown, does not raise any legal presumption of guilt. It is to be given the weight to which you, the jury, think it is entitled under the circumstances shown. It is up to you as the judges of the facts to decide whether the conduct of the defendant reflects a consciousness of guilt and consider such in your deliberations in conformity with these instructions."