STATE OF CONNECTICUT *v.* COREY PETTIGREW
(AC 29405)

Bishop, Alvord and Schaller, Js.

Argued April 19—officially released September 21, 2010

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Toni M. Smith-Rosario*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Joseph C. Valdes*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Corey Pettigrew, appeals from the judgments of conviction, rendered after a jury trial, of two counts of conspiracy to distribute narcotics by a person who is not drug-dependent in violation of General Statutes §§ 53a-48 (a) (2) and 21a-278 (b), one count of attempt to distribute narcotics by a person who is not drug-dependent in violation of General Statutes §§ 53a-49 (a) (2) and 21a-278 (b), two counts of conspiracy to distribute narcotics within 1500 feet of a public housing project in violation of General Statutes §§ 53a-48 (a) and 21a-278a (b), and one count of attempt to distribute narcotics within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b). On appeal, the defendant claims that (1) the trial court improperly consolidated two separate cases against him for trial, (2) § 21a-278a (b) as applied to him is unconstitutionally vague, (3) the state's evidence was insufficient to prove that he intended to distribute narcotics within 1500 feet of a public housing project in either instance and (4) his multiple sentences for conspiracy violate double jeopardy. We agree with the defendant's final claim, reverse the judgments as

to the sentence that was imposed and remand the case for resentencing. We affirm the judgments of the trial court in all other respects.

The following facts and procedural history are relevant to the issues presented in the defendant's appeal. The charges against the defendant stemmed from two separate incidents. The jury reasonably could have found the following facts as to the July 21, 2006 incident. Noor Mohammed, a taxicab driver, was arrested and, while police officers searched his vehicle, his cellular telephone rang, and an officer answered it. The caller, later identified as the defendant, stated that he had "the nine" that Mohammed wanted.[1] "The nine" referred to nine bags of crack cocaine that the officers originally intended to purchase from Mohammed and which Mohammed had indicated that he would obtain but did not have at the time of his arrest. Officers used Mohammed's taxicab and cellular telephone to arrange for the purchase of the narcotics, and the defendant and Tony Wilson were arrested when they approached the taxicab. The police recovered eight bags of crack cocaine that Wilson had carried and cash in the amount of $740 that the defendant had in his pockets, $440 of which consisted of $20 bills or smaller.

The jury reasonably could have found the following facts as to the March 13, 2007 incident. Police officers observed that Robert Moore and the defendant stood next to each other on the street in an area known for drug activity. Moore handed narcotics to Michael Hill,

---

[1] The defendant presented evidence that the cellular telephone on which the call was placed to Mohammed's cellular telephone actually belonged to Tony Wilson and that when the defendant was arrested, he was carrying his own, and not Wilson's, cellular telephone. There was considerable testimony that a person wearing an orange hat was talking on a cellular telephone at the same time that a police officer was talking to the suspect while using Mohammed's cellular telephone. The defendant admitted that he was the only person wearing an orange hat but claimed that he never used Wilson's telephone. We defer to the fact finder as to the credibility of these witnesses.

who rode away on his bicycle and engaged in a transaction. When Hill returned, he gave money to the defendant, who put it in his pocket. When Hill was stopped by uniformed police officers in view of the men, an officer observed Moore remove narcotics from his pocket and place them in a planter across the street from where the men had been standing.[2] Officers recovered five bags of crack cocaine from the planter and arrested Moore and the defendant. At the time of his arrest, the defendant had $708 in his pocket, $408 of which consisted of $20 bills or smaller.[3]

The court granted the state's motion to join the two informations for trial, and the defendant thereafter was charged in a combined, six count substitute information dated July 13, 2007. The defendant was convicted on all counts and sentenced to a total effective term of twelve years imprisonment, suspended after eight years, with five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

JOINDER

The defendant claims that the court improperly joined two separate cases against him for trial. Specifically, the defendant claims that under *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987), the court improperly joined the cases because they did not involve discrete, easily distinguishable factual scenarios. The defendant claims, in the alternative, that when

---

[2] At the request of the officers who observed the scene, other officers stopped and searched Hill the next time he left the area on his bicycle. No drugs were found on him and he was not arrested. An officer testified that he observed that the men saw uniformed officers in a patrol car stop Hill.

[3] The state's expert testified that it is typical among drug dealers that one person holds the money and that another person holds the drugs. He also testified that the going rate for crack cocaine in the Stamford area was $20 and that it is common for drug dealers to have a large number of smaller denominations on their person.

this court applies the *Boscarino* standard, it assumes that the jury has been properly instructed to consider the evidence in each case separately. He claims that because the court improperly instructed the jury regarding the cross admissibility of the evidence, the fundamental predicate for the application of the *Boscarino* standard is absent. We reject both claims.

We set forth the standard of review and applicable principles of law. "Despite the existence of [the risk of prejudice] this court consistently has recognized a clear presumption in favor of joinder and against severance . . . and, therefore, absent an abuse of discretion . . . will not second guess the considered judgment of the trial court as to the joinder or severance of two or more charges." (Internal quotation marks omitted.) *State* v. *Randolph*, 284 Conn. 328, 338, 933 A.2d 1158 (2007). "The court's discretion regarding joinder, however, is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, we have identified several factors that a trial court should consider in deciding whether a severance may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) Id. These three factors, often referred to as the *Boscarino* factors, were articulated in *State* v. *Boscarino*, supra, 204 Conn. 722–24.

A

The defendant claims that joinder was improper under the standard articulated in *State* v. *Boscarino*,

supra, 204 Conn. 722–24. Specifically, he argues that joinder was improper because the two cases did not involve discrete, easily distinguishable factual scenarios.[4] We disagree.

The record reveals the following procedural history that is relevant to the defendant's claim. Prior to trial, the state filed a motion to consolidate the two cases. The defendant objected to the motion, arguing that there was a risk of prejudice in joining the cases for trial. He argued that the facts in each case were difficult to distinguish. For example, in each case, a different third party was the actual supplier of the narcotics. In each case, the officers claimed to have found more than $700 on the defendant's person. One incident occurred near the intersection of Mill River Road and Stillwater Avenue in Stamford; the other occurred on Stillwater Avenue in Stamford. The defendant argued that judicial economy would not be served because the witnesses differed in each case.

---

[4] The defendant also claims that the evidence was presented in a manner that confused the jury. The trial spanned four days of evidence, during which the state presented thirteen witnesses and the defendant presented eight witnesses. Cf. *State* v. *Delgado*, 243 Conn. 523, 536–37, 707 A.2d 1 (1998) (eleven day trial with twenty-five witnesses not overly long or complex and did not create sufficient risk of jury confusion). A review of the transcripts reveals that the evidence was presented in a reasonably clear order, although it was not strictly chronological. Specifically, three of the state's witnesses testified about both incidents, and the two officers who testified about the March, 2007 incident did so out of sequence.

As noted by the court, there was no request and no instruction that a particular witness could testify only as to one incident or the other. The evidence adduced at trial was uncomplicated. The attorneys and witnesses were consistent in their references to the specific incidents by the dates on which they occurred. We are not persuaded that the departure from strict chronological order in this short trial confused the jury or prejudiced it against the defendant. See *State* v. *Rodriguez*, 91 Conn. App. 112, 118–19, 881 A.2d 371 ("[t]he evidence need not be presented in strictly chronological order . . . as long as the presentation does not confuse the jury and does not prejudice it against the defendant"), cert. denied, 276 Conn. 909, 886 A.2d 423 (2005). Accordingly, we reject this claim.

The court overruled the defendant's objection and granted the state's motion. The court noted that nothing about the defendant's alleged conduct was otherwise shocking or heinous. The court found that the allegations were discrete and easily distinguishable because they were separated by a number of months and noted that so long as the state presented evidence in an orderly fashion, there was no risk of jury confusion. Having considered these factors, the court granted the state's motion.

In granting the state's motion, the court relied on the *Boscarino* factors. The court concluded that there was no allegation or evidence of brutal or shocking conduct. "This court has held that charges involving the sale of narcotics are not violent." *State* v. *Barnes*, 112 Conn. App. 711, 727, 963 A.2d 1087 (2009). The court reasonably concluded that the charges involved discrete, easily distinguishable factual scenarios. It is unlikely that the jurors would confuse the taxicab incident of July, 2006, with the street activities of March, 2007. See id., 726–27 (drug crimes alleged in each information occurred on different dates at different locations and were discrete and easily distinguishable). Finally, when ruling on the motion for joinder, the court reasonably could have concluded that the case would not be particularly lengthy or complex. See footnote 4 of this opinion. Accordingly, the court did not abuse its discretion in granting the state's motion.

B

The defendant claims that when this court reviews a trial court's decision to join two informations for trial under the *Boscarino* standard, it assumes that the jury has been properly instructed to consider the evidence adduced in each case separately and independently. He claims that in the present case, the court did not specifically instruct the jury that it could not consider the totality of the evidence in deciding each individual

count. In addition, he argues, certain instructions led the jury to believe that it *could* consider all the evidence in deciding each case. The defendant claims that because the court's instructions regarding cross admissibility were improper, the fundamental predicate for the application of the *Boscarino* standard is absent such that the case should be remanded for retrial. See *State* v. *Randolph*, supra, 284 Conn. 362–64. We are not persuaded.

A thorough review of the record reveals that the court never expressly ruled as to whether the evidence was cross admissible for any purpose. The defendant maintains that because the court did not include his requested instruction verbatim, the jury would believe that it could consider all of the evidence in deciding each case.[5] We cannot conclude that the instructions

---

[5] Specifically, the defendant objects to the following instructions, which he maintains misled the jury to believe that it could consider "all the evidence" when deciding each case.

Regarding closing arguments, the court instructed: "You should keep in mind that the arguments and statements by the attorneys and final argument, or during the course of the case, are not evidence. . . . [Regarding] any arguments that were made by attorneys with regard to the law, you should refer to the court's ruling in terms of what the law is. In deciding what the facts are, you must, of course, consider *all the evidence.*"

\* \* \*

"[I]n doing this, you must decide which testimony to believe and which testimony not to believe. You may believe all, none or a part of any witness' testimony. In making that decision, you may take into account a number of factors, including the following . . . . How reasonable was the witness' testimony when considered in light of *all the evidence* in the case . . . ."

\* \* \*

"The weight of the evidence presented by each side does not depend on the number of witnesses testifying on one side or the other. You must consider *all the evidence* in the case. You may decide that the testimony of a smaller number of witnesses on one side has greater weight than that of a larger number on the other side . . . ."

\* \* \*

"[The opinion of an expert witness] is in no way binding upon you. It is for you to consider along with *the other evidence* in the case, and, using your best judgment, to determine whether or not you will give any weight to it, and, if so, what weight you will give to it." (Emphasis added.)

misled the jury to believe the evidence was cross admissible. Accordingly, the issue of joinder was properly decided under the *Boscarino* standard.

The following additional procedural history is relevant to our resolution of the defendant's claim. The defendant requested a jury instruction that when evidence is admitted relating to one case but not the other case, the jury must consider the evidence only with regard to that case and not the other case. The requested charge stated in relevant part: "[Y]our findings in one case do not in themselves establish a basis for similar findings in the other case. . . . You will be required therefore to render a verdict upon each information separately. I remind you that during the course of the trial evidence was presented for you to consider in each of the cases. Your verdict for each case, however, must be based solely on the evidence that was admitted for your consideration with respect to that particular case. Thus, where evidence was admitted relating to one case and not the other, you must consider it only with regard to the appropriate case and disregard it as to the other."

Regarding the defendant's requested charge, the court stated: "I am not going to go as far as what [the defendant is] asking, but I have incorporated the basic gist of what the defense is requesting in terms of joinders. If they are two cases, [they] need to be tried separately and need to be considered separately and distinctly from one another." At the same time, the court considered and refused the state's request to instruct the jury that the evidence was cross admissible as "evidence of a system of criminal activity or of

We are not persuaded. In context, these admonitions to consider "all the evidence" cannot reasonably be understood to mean that the jury should consider all the evidence *collectively* when deciding whether the state has met its burden as to each incident.

absence [of] mistake or accident and that the jury can consider those for the purpose of intent."[6]

In its instructions to the jury, the court stated: "You may recall that the defendant has two separate files which have been joined for purposes of trial. . . . They are incorporated into a single information simply for purposes of clarity. They are, however, separate cases and should be decided independently of each other." The court then emphasized that the jury must return a separate verdict as to each of the charges and reiterated that there were two cases that must be considered separately: "Again, each case must be considered separately and must be decided by your verdict independent of the other; that is, your findings in one case do not in themselves establish the basis for similar findings in the other. Each case is to be considered as if it were tried alone. You are therefore required to render verdicts as to each information in each count separately." The court gave a written charge to the jury, including a section titled "multiple counts and joinder" in which it reiterated that same language.

"Our standard of review regarding properly preserved claims of improper jury instructions is well settled. In reviewing claims of instructional [impropriety], we seek to determine whether it was . . . reasonably possible that the jury was misled by the trial court's instructions. . . . [T]he charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be

---

[6] The court stated: "I have had an opportunity [during lunch recess] to read over the cases, the ones that were originally cited by the state as well as several other cases with joinder and the instructions on how the jury should evaluate the evidence. After having read those cases, [it is] the court's opinion that there should not be a further instruction in terms of the fact that the evidence can be used by the jury in total in determining intent."

read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law . . . we will not view the instructions as improper. . . . Although [a] request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given . . . [a] refusal to charge in the exact words of a request . . . will not constitute error if the requested charge is given in substance. . . . Thus, when the substance of the requested instructions is fairly and substantially included in the trial court's jury charge, the trial court may properly refuse to give such instructions." (Internal quotation marks omitted.) *State* v. *Fair*, 118 Conn. App. 357, 364–65, 983 A.2d 63 (2009).

The primary distinction between what the defendant requested and what the court instructed was explicit language regarding the cross admissibility of the evidence. We cannot conclude that the charge as given included the gravamen of the requested charge. Cf. id., 366 (concluding that court fairly and substantially included requested instruction in jury charge). Nonetheless, we find that, when considered as a whole, the charge presented the case to the jury so that no injustice would result.

The court carefully reviewed each count of the information and, noting that identical legal charges arose out of different incidents, highlighted the importance of considering the testimony that pertained to each incident separately.[7] The court repeatedly admonished,

[7] The court read count one, conspiracy to distribute narcotics by a person who is not drug-dependent, and noted that count five was the same legal charge "with this exception: count one is alleged to have occurred on July 21, 2006, and count five is alleged to have occurred on March 13, 2007. You will also recall that the counts are alleged to have occurred at different locations and involved the testimony of different witnesses. . . . You should remember that the state must prove the defendant's guilt beyond a reason-

in both its oral and written instructions, that the jury must "consider each case separately," "consider each case independently" and consider "each case . . . as if it were tried alone." Even though the court stated that the jury should "consider each case separately," and not that it should "consider *the evidence in* each case separately"; (emphasis added); it was not reasonably possible that the charge, when read as a whole, impermissibly misled the jury to believe that it could consider all the evidence collectively when deciding each case.

The defendant maintains that this case is more properly analyzed under *Randolph* than under *Boscarino*. In *State* v. *Randolph,* supra, 284 Conn. 331, the trial court consolidated two robbery cases, one of which involved a fatal shooting. Id., 332. The court expressly instructed the jury that it "may consider the evidence of one case in the other case solely for the purpose of whether . . . it establishes a characteristic method in the commission of criminal acts . . . ." (Internal quotation marks omitted.) Id., 336. Our Supreme Court disagreed, finding that the trial court's evidentiary impropriety substantially affected the verdict in both cases and concluding that the defendant was entitled to a new trial. Id., 362. It declined to rule on the question of whether the trial court abused its discretion in consolidating the two cases pursuant to *Boscarino* in light of those improper jury instructions. The court noted: "Upon remand, if the state again moves to consolidate the [two] cases for trial, it is left to the considered judgment of the trial court to determine whether consolidation would be appropriate under *State* v. *Boscarino,*

---

able doubt *separately and distinctly* as to each of the different counts and offenses . . . ." (Emphasis added.) The court gave similar instructions regarding counts three and six, both of which involved conspiracy to distribute narcotics within 1500 feet of a public housing project but stemmed from separate incidents. The court subsequently reviewed the information as to counts five and six separately.

supra, 204 Conn. 722–24, in accordance with the princi- ples articulated in the body of this opinion . . . and . . . an order of consolidation must be accompanied by adequate and proper jury instructions cautioning the jury to consider the evidence in each case separately and independently." *State* v. *Randolph*, supra, 368.

In contrast, in the present case, the challenged instruction neither expressly instructed the jury that the substantive evidence was cross admissible, nor was it reasonably possible that the instruction impermissi- bly misled the jury to believe that it could consider all of the evidence collectively in deciding each case. Accordingly, *Randolph* is inapposite, and the issue of joinder was properly decided using the *Boscarino* factors.

II

CONSTITUTIONALITY OF § 21a-278a (b)

The defendant claims that § 21a-278a (b) is unconsti- tutionally vague as applied to him.[8] He asserts that his unpreserved claim is entitled to appellate review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

A defendant can prevail on an unpreserved claim only if "*all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitu- tional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless

---

[8] We note that this claim applies only to three of the six charges of which the defendant was convicted. Specifically, it applies to counts three and four, conspiracy to distribute narcotics within 1500 feet of a public housing project and attempt to distribute narcotics within 1500 feet of a public housing project, respectively, which pertain to the July, 2006 case, and count six, conspiracy to distribute narcotics within 1500 feet of a public housing project, which pertains to the March, 2007 case.

error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. We find that the record is adequate to review the alleged claim of error. "[I]n *State* v. *Schriver*, 207 Conn. 456, [459], 542 A.2d 686 (1988), our Supreme Court . . . held that a claim of unconstitutional vagueness falls within the parameters of *State* v. *Evans*, 165 Conn. 61, 69, 327 A.2d 576 (1973), and therefore warrants appellate scrutiny because it implicates the fundamental due process right to fair warning . . . ." (Internal quotation marks omitted.) *State* v. *Patrick*, 42 Conn. App. 640, 649, 681 A.2d 380 (1996). Accordingly, the defendant's claim meets the first two prongs of *Golding* and is, therefore, subject to review. See id. We conclude, however, that the defendant's claim fails to satisfy the third prong of *Golding* because the alleged constitutional violation does not clearly exist.

"We begin by setting forth the relevant legal principles. The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution. . . . The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue. . . .

"In challenging the constitutionality of a statute, the defendant bears a heavy burden. To prevail on his vagueness claim, [t]he defendant must demonstrate beyond a reasonable doubt that the statute, as applied to him, deprived him of adequate notice of what conduct the statute proscribed or that he fell victim to arbitrary and discriminatory enforcement. . . . The proper test for determining [whether] a statute is vague as applied is whether a reasonable person would have anticipated that the statute would apply to his or her particular conduct. . . . The test is objectively applied to the actor's conduct and judged by a reasonable person's reading of the statute . . . .

"If the language of a statute fails to provide definite notice of prohibited conduct, fair warning can be provided by prior judicial opinions involving the statute . . . or by an examination of whether a person of ordinary intelligence would reasonably know what acts are permitted or prohibited by the use of his common sense and ordinary understanding." (Internal quotation marks omitted.) *State* v. *Lavigne*, 121 Conn. App. 190, 205–206, 995 A.2d 94 (2010).

Section 21a-278a (b) provides in relevant part: "Any person who violates . . . [§] 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school [or] a public housing project . . . shall be imprisoned for a term of three years, which shall not be suspended . . . ." As this court has held regarding § 21a-278a (b): "[A] person of ordinary intelligence should know that possession of cocaine with intent to sell is illegal in its own right. Therefore, a person of ordinary intelligence

should also know that this prohibited activity would also be illegal within 1500 feet of a school." *State* v. *Patrick*, supra, 42 Conn. App. 649. "[O]ur Supreme [Court held] in *State* v. *Denby*, 235 Conn. 477, 668 A.2d 682 (1995) . . . that the plain language of § 21a-278a (b) requires as an element of the offense an intent to sell or dispense the narcotics at a location that is within [1500] feet of a school. The state is not, however, required to prove that the defendant knew that this location was within the zone." (Internal quotation marks omitted.) *State* v. *Patrick*, supra, 650.

The defendant maintains that the statute is impermissibly vague because it fails to provide adequate notice that "the act of agreeing to distribute drugs while in the protected area, even though the drugs might be distributed outside the protected area, is enough for a conviction for either conspiring or attempting to distribute drugs under the statute."[9] We first address the vagueness claim as it applies to the conspiracy charges. We then address the attempt charge.

"Conspiracy is a specific intent crime, with the intent divided into two elements: (a) the intent to agree or conspire and (b) the intent to commit the offense which is the object of the conspiracy. . . . Thus, [p]roof of a conspiracy to commit a specific offense requires proof that the conspirators intended to bring about the elements of the conspired offense." (Citation omitted;

---

[9] The defendant also argues that the statute leads to arbitrary enforcement "if the police are allowed to entice a defendant to sell his drugs in a protected area when he might not otherwise have had the intent to sell them in that area." There is no evidence in the record that the defendant was outside of the protected zone and was lured into the zone by the police. Instead, with regard to the July, 2006 incident, the defendant poses the hypothetical scenario that had the police not arrested him before he reached the taxicab, he and Wilson could have gotten into the taxicab and driven to another location that was not within 1500 feet of a public housing project. We cannot conclude, based on this proposed scenario, that the defendant has shown beyond a reasonable doubt that he fell victim to arbitrary and discriminatory enforcement.

internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 167, 869 A.2d 192 (2005). The essential elements of the crime of conspiracy to distribute narcotics within 1500 feet of a public housing project are (1) intent to agree or to conspire, (2) intent to distribute narcotics within 1500 feet of a public housing project and (3) an overt act committed in pursuance of this conspiracy. See id., 167–68; see also General Statutes §§ 53a-48, 21a-277 (b) and 21a-278a (b).

A person of ordinary intelligence would know that the act of "agreeing to distribute drugs while in the protected area" is illegal in its own right. The law regarding conspiracy and the plain language of the challenged statute provided the defendant with adequate notice that he could be convicted of these charges if the state proved beyond a reasonable doubt that he had an intent to agree or to conspire, an intent to distribute narcotics at a specific location that was within 1500 feet of a public housing project, and that he committed an overt act in pursuance of the conspiracy. The jury concluded, in each case, that the defendant intended to distribute narcotics at a specific location.[10] The jury also concluded, in each case, that the defendant's actions constituted an overt act in pursuance of the conspiracy. It is undisputed that each location was within 1500 feet of a public housing project. Thus, the defendant was not convicted simply because the first element of the conspiracy charge—the intent to agree or to conspire—occurred within 1500 feet of a public housing project, but because the jury concluded that *all* of the elements did. Accordingly, his vagueness challenge as to the conspiracy charges must fail.

"Under . . . § 53a-49 (a), [a] person is guilty of an attempt to commit a crime if, acting with the kind of

---

[10] The defendant challenges the sufficiency of the evidence as to his intent. See part III of this opinion.

mental state required for commission of the crime he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. . . . Essentially, an attempt under § 53a-49 (a) is an act or omission done with the intent to commit some other crime. The rationale is that while a defendant may have failed in his purpose, his conduct is, however, criminally culpable, and if carried far enough along causes a sufficient risk of harm to be treated as a crime in and of itself. . . .

"Each subdivision of § 53a-49 (a) sets forth an alternative way to commit attempt, and the difference between the subdivisions is significant. . . . The second type, § 53a-49 (a) (2), involves carrying out in part some substantive portions of the proscribed conduct. . . . [A] court should charge on § 53a-49 (a) (2) when the evidence indicates that a perpetrator has done something which, under the circumstances as he believed them to be, is an act constituting a substantial step in a course of conduct planned to culminate in his commission of a particular crime. In other words, this sub[division] is directed at the more common attempt situations [wherein] the actor's conduct falls short of the completed offense for reasons other than impossibility." (Citations omitted; internal quotation marks omitted.) *State* v. *Cox*, 293 Conn. 234, 240–42, 977 A.2d 614 (2009).

The attempt charge against the defendant relates only to the July, 2006 incident. In that incident, the defendant was arrested when he and Wilson approached the taxicab after the defendant had arranged to meet the driver in order to exchange drugs for an agreed sum of money. It was neither unforeseeable, nor unreasonable, that a jury would conclude that the defendant's conduct constituted a substantial step in a course of conduct

planned to culminate in his commission of the distribution of narcotics.[11] It is undisputed that the defendant was within 1500 feet of a public housing project when he committed that substantial step. Nor was it unforeseeable that a reasonable person could conclude that the defendant intended to complete the sale when he reached the taxicab and, therefore, was within the protected zone.[12] As noted previously, the law regarding attempt and the plain language of the statute provided the defendant with adequate notice of what conduct the statute proscribed. Accordingly, his vagueness challenge as to the attempt charge must fail.

The defendant has not demonstrated beyond a reasonable doubt that the statute was impermissibly vague such that it deprived him of adequate notice. Accordingly, we conclude that the defendant's claim fails to satisfy the third prong of *Golding* because the alleged constitutional violation does not clearly exist.

### III

### SUFFICIENCY OF EVIDENCE

The defendant claims that the state's evidence was insufficient to prove that he intended to distribute narcotics within 1500 feet of a public housing project in either case.[13] We are not persuaded.

---

[11] See *State* v. *Sorabella*, 277 Conn. 155, 193, 891 A.2d 897 (analyzing vagueness challenge to statute defining crime of attempt to commit sexual assault in second degree and noting that "it was neither unforeseeable nor unreasonable that the jury would conclude that the defendant's conduct constituted a substantial step in a course of conduct planned to culminate in his commission of the crime[s] . . . . General Statutes § 53a-49 (a) (2)." [Internal quotation marks omitted.]), cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006).

[12] The defendant challenges the sufficiency of the evidence as to his intent. See part III of this opinion.

[13] The defendant maintains that this unpreserved claim can be reviewed under *Golding*. "[A]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*. Accordingly, we conclude that no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, thus, review the challenge as we do any other

Before we address separately the arguments raised with regard to each case, we set forth our well established standard of review. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical . . . to conclude that a basic fact or an inferred fact is true, the [fact finder] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact]

properly preserved claim." (Internal quotation marks omitted.) *State* v. *Torres*, 111 Conn. App. 575, 579, 960 A.2d 573 (2008), cert. denied, 290 Conn. 907, 964 A.2d 543 (2009).

may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty. . . .

"Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Citations omitted; internal quotation marks omitted.) *State* v. *Liborio A.*, 93 Conn. App. 279, 283–84, 889 A.2d 821 (2006).

On appeal, the defendant challenges only the sufficiency of the evidence as to his intent.[14] As noted previously, in order for the defendant to be convicted of conspiracy to distribute narcotics within 1500 feet of a public housing project, the state must prove he had the intent to distribute narcotics at a specific location. See *State* v. *Padua*, supra, 273 Conn. 167–68. Similarly, in order for the defendant to be convicted of attempt to distribute narcotics within 1500 feet of a public housing project, the state must prove he had the intent to distribute narcotics at a specific location. See General Statutes §§ 21a-278a (b) and 53a-49 (a) (2); see also *State* v̇. *Cox*, supra, 293 Conn. 242. The defendant argues that for both the July, 2006 and March, 2007 incidents, the evidence

[14] We note that this claim applies only to three of the six charges of which the defendant was convicted. See footnote 8 of this opinion.

shows only that he intended to distribute narcotics at some undisclosed location, not at a specific location that was within 1500 feet of a public housing project. He does not dispute that the evidence is sufficient to show that he was within 1500 feet of a public housing project at the time of each arrest. We will address each case separately.

"[T]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the jury to decide." (Internal quotation marks omitted.) *State* v. *Francis*, 90 Conn. App. 676, 681, 879 A.2d 457, cert. denied, 275 Conn. 925, 883 A.2d 1248 (2005).

"The quantity of money seized from [a] defendant [is] relevant to the issue of intent to sell cocaine. . . . [E]vidence from which the jury could reasonably infer intent to sell the . . . cocaine includes . . . the amount of . . . cash the defendant possessed . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Garcia*, 108 Conn. App. 533, 539, 949 A.2d 499, cert. denied, 289 Conn. 916, 957 A.2d 880 (2008). "Evidence demonstrating that the defendant was present in a known drug trafficking area further suggests an intent to sell." (Internal quotation marks omitted.) *State* v. *Francis*, supra, 90 Conn. App. 682.

The events leading to the defendant's arrest in the July, 2006 incident provided sufficient circumstantial evidence from which the jury reasonably could have

concluded that when he and Wilson reached the taxicab, they intended to exchange the narcotics that Wilson carried for the agreed on price.[15] As it is undisputed that both the taxicab and the defendant were within 1500 feet of a public housing project at the time of the arrest, there was sufficient evidence from which the jury reasonably could have concluded that the defendant had the requisite intent to distribute narcotics within the protected zone for the purposes of his conspiracy conviction.[16] The jury reasonably could have concluded that the defendant's conduct—approaching the taxicab after engaging in the telephone conversation with the police officer—constituted a substantial step in a course of conduct planned to culminate in his and Wilson's exchange of the narcotics for $200. Thus, there was sufficient evidence from which the jury reasonably could have inferred that he had the requisite intent for the purposes of his attempt conviction.[17]

Regarding the March, 2007 incident, the defendant argues that because it is unknown exactly where Hill engaged in the exchange of drugs for cash, there is

[15] The defendant argues that he and Wilson could have gotten into the taxicab and driven to another location that was not within 1500 feet of a public housing project. There was no evidence presented from which the jury could draw that conclusion.

[16] As noted previously, the essential elements of the crime of conspiracy to distribute narcotics within 1500 feet of a public housing project are (1) intent to agree or to conspire, (2) intent to distribute narcotics within 1500 feet of a public housing project and (3) an overt act committed in pursuance of this conspiracy. See *State* v. *Padua*, supra, 273 Conn. 167–68.

[17] The defendant was charged with attempt to distribute narcotics within 1500 feet of a public housing project in violation of §§ 53a-49 (a) (2) and 21a-278a (b). As noted previously, "a court should charge on § 53a-49 (a) (2) when the evidence indicates that a perpetrator has done something which, under the circumstances as he believed them to be, is an act constituting a substantial step in a course of conduct planned to culminate in his commission of a particular crime. In other words, this sub[division] is directed at the more common attempt situations [wherein] the actor's conduct falls short of the completed offense for reasons other than impossibility." (Internal quotation marks omitted.) *State* v. *Cox*, supra, 293 Conn. 242.

insufficient evidence from which the jury reasonably could have concluded that the defendant intended to distribute narcotics at a specific location that was within 1500 feet of a public housing project. Although the officers did not observe the transaction, the jury reasonably could have concluded from the circumstances presented that when Hill rode off on his bicycle, he engaged in a drug transaction. It also was reasonable for the jury to conclude that the money Hill gave to the defendant constituted the proceeds from the transaction. The officers observed several such exchanges.[18] On the basis of these completed exchanges, together with the fact that the defendant held more than $700, much of which was in denominations of $20 or smaller, and the additional fact that he was present in a known drug trafficking area, the jury reasonably could have found intent to distribute narcotics at that location. It is undisputed that the defendant engaged in his portion of these transactions when he was standing within 1500 feet of a public housing project. Accordingly, the events leading to his arrest provided sufficient circumstantial evidence from which the jury reasonably could have determined that the defendant intended to distribute narcotics within 1500 feet of a public housing project.

IV

DOUBLE JEOPARDY

Finally, the defendant claims that his multiple sentences for conspiracy violate double jeopardy.[19] He argues

[18] There was conflicting testimony as to how many transactions the officers observed. From the evidence, it would be reasonable for the jury to conclude that more than two such transactions occurred.

[19] "The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . This constitutional provision is applicable to the states through the due process clause of the fourteenth amendment." (Internal quotation marks omitted.) *State* v. *Padua*, supra, 273 Conn. 172 n.39.

that this unpreserved claim is entitled to appellate review under *State* v. *Golding*, supra, 213 Conn. 239–40. We agree that his claim is subject to review because it satisfies the first two prongs of *Golding* in that it raises a constitutional claim involving a fundamental right and the record is adequate for review. See part II of this opinion.

The defendant's claim also satisfies the third prong of *Golding* because it is clear from the record that a double jeopardy violation exists. "Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one. . . . The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute . . . . For such a violation, only the single penalty prescribed by the statute can be imposed." (Internal quotation marks omitted.) *State* v. *Padua*, supra, 273 Conn. 173.

Regarding the July, 2006 incident, the defendant was charged with, convicted of and ultimately sentenced for both conspiracy to distribute narcotics—twelve years imprisonment, suspended after five years, and five years probation—and conspiracy to distribute narcotics within 1500 feet of a public housing project—three years imprisonment consecutive to that sentence. Regarding the March, 2007 incident, the defendant was sentenced for both conspiracy to distribute narcotics and for conspiracy to distribute narcotics within 1500 feet of a public housing project, both sentences to run concurrently with the foregoing sentence.

The defendant was ultimately sentenced on four separate conspiracy charges arising out of the two incidents.

In a case such as this, however, only the single penalty prescribed by the statute can be imposed for each incident. See id. Accordingly, the defendant's dual sentences for the conviction of two separate conspiracy counts stemming from each incident were not harmless and cannot stand.

The judgments are reversed only as to the sentences on the four conspiracy offenses and the case is remanded with direction to merge the convictions on the two conspiracy offenses in each case and to vacate the sentence for one of them. The judgments are affirmed in all other respects.

In this opinion the other judges concurred.